FILED

2021 May-25  AM 11:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MEDLINE INDUSTRIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:19-cv-1415-GMB |
| | ) | |
| STRYKER SUSTAINABILITY | ) | |
| SOLUTIONS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court are the Motion for Summary Judgment filed by Defendant

Stryker Sustainability Solutions, Inc. ("Stryker") (Doc. 70) and the Motion to Strike

filed by Plaintiff Medline Industries, Inc. ("Medline"). Doc. 76.  The motions have

been fully briefed and are ripe for decision. Docs. 71, 76, 77, 80, 81, 83, 85 & 86.

The parties have consented to the jurisdiction of a United States Magistrate Judge

pursuant to 28 U.S.C. § 636(c). Doc. 10.  For the following reasons, the Motion for

Summary Judgment is due to be granted, and the Motion to Strike is moot.[1]

## I. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no

---

[1] Medline moved to strike a portion of Frank Czajka's testimony that Stryker cited in support of
its motion for summary judgment. Doc. 76.  Because the court resolves summary judgment without
reference to this portion of Czajka's testimony, it is ORDERED that the motion to strike is MOOT.

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "The purpose of summary judgment is to separate real, genuine issues from those which are formal or pretended." *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute of material fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  In responding to a properly supported motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Indeed, the nonmovant must "go beyond the pleadings" and submit admissible evidence demonstrating "specific facts showing that there is a genuine [dispute] for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted).  If the evidence

2

is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

When a district court considers a motion for summary judgment, it "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party, and must resolve all reasonable doubts about the facts in favor of the nonmovant." *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir. 2008) (citation and internal quotation marks omitted).  The court's role is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." *Allen v. Bd. of Pub. Ed. for Bibb County*, 495 F.3d 1306, 1315 (11th Cir. 2007) (citation omitted).  On the other hand, if the nonmovant "fails to adduce evidence which would be sufficient . . . to support a jury finding for [the nonmovant], summary judgment may be granted." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1370 (11th Cir. 1997) (citation omitted).

## II.  FACTUAL BACKGROUND

Medline is in the business of reprocessing medical products. Doc. 71-1 at 19. In reprocessing, Medline receives used medical products which it then sanitizes,

repackages, and ships back out to be used again. Doc. 71-1 at 53.   Medline outsources some of its reprocessing work to other companies. Doc. 71-2 at 10.   In 2014, Medline executed a Private Label Reprocessing Agreement with Hygia Health Services, Inc. ("Hygia"), under which Hygia would reprocess certain medical products for Medline. Doc. 71-5 at 2.   The Agreement included a non-solicitation provision: "HYGIA agrees not to solicit directly or indirectly any customers that MEDLINE refers, implements reprocessing services with, or issues purchase orders to HYGIA for reprocessing services during the term of this Agreement, and for a period of 18 months after the termination or expiration of this Agreement." Doc. 71-5 at 6.

The Private Label Reprocessing Agreement was "binding on each of the party's respective successors and permitted assigns, and for avoidance of doubt is binding on any purchaser of all or substantially all of the party's stock or assets, or any surviving or acquiring entity in any merger, acquisition or other similar change of control transaction." Doc. 71-5 at 6.   On January 1, 2015, Medline and Hygia amended the agreement but did not revise the non-solicitation clause. Doc. 71-6. Medline referred more than 800 customers to Hygia during the life of the agreement. Doc. 71-2 at 15.

In 2018, Stryker entered into a merger transaction with Hygia.[2] Docs. 77-9 at 9 & 77-10 at 2.  Following the transaction, Frank Czajka, Medline's president, believed that Stryker became subject to Hygia's obligations under the agreement. Doc. 71-1 at 47.  Later that year, Czajka told Brian White, Stryker's president, that he believed Stryker was soliciting Medline's customers in violation of the non-solicitation clause in the agreement. Doc. 77-16 at 2.  Czajka repeated his concerns to White in April 2019. Doc. 77-19 at 2–3.  White responded to Czajka's concerns by asking for a list of Medline customers that Czajka believed Stryker had improperly solicited. Doc. 71-9 at 36.  In response, Medline sent Stryker a list of names and account numbers for 863 customers. Doc. 71-14.  The agreement expired in June 2019, but the non-solicitation provision remained in effect for 18 more months. Doc. 71-5 at 3 & 6.  Medline filed this action in 2019, alleging that Stryker breached the non-solicitation provision by soliciting Medline's customers. Doc. 13 at 10.

## III.  DISCUSSION

Stryker advances three arguments in support of its motion for summary judgment.  First, Stryker argues that it never assumed Hygia's obligations under the Private Label Reprocessing Agreement. Doc. 71 at 2–3.  Second, Stryker contends

---

[2] Medline and Stryker dispute the exact nature of this transaction. *Compare* Doc. 71 at 7, *with* Doc. 77 at 4.  However, for reasons discussed below, the details of the merger are not material to the court's decision.

that the agreement's non-solicitation clause is unenforceable under Alabama law. Doc. 71 at 3.   Third, Stryker asserts that Medline cannot and has not produced evidence "in support of a cognizable damages theory." Doc. 71 at 3.   For the following reasons, the court finds that the non-solicitation clause is unenforceable under Alabama law and therefore need not decide the other two issues.

Before it was repealed, Alabama Code § 8-1-1 read, "Every contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind otherwise than is provided by this section is to that extent void."  The statute was repealed and replaced as of January 1, 2016. *M5 Mgmt. Servs. v. Yanac*, 428 F. Supp. 3d 1282, 1291 n.2 (N.D. Ala. 2019).  It is undisputed that the pre-2016 version of the statute governs this dispute because the parties executed the agreement (in 2014) and amended it (in 2015) while the statute remained in effect. *See* Docs. 71 at 18 & 77 at 19; *M5 Mgmt. Servs.*, 428 F. Supp. 3d at 1291 n.2.  "The burden is upon the person or entity seeking to enforce a contract which restrains a lawful trade or business to show that it is not void." *DeVos v. Cunningham Group, LLC*, 297 So. 3d 1176, 1184 (Ala. 2019).  Accordingly, it is Medline's burden to show that the non-solicitation provision of the Private Label Reprocessing Agreement is not void.

"Alabama law distinguishes between total restraints and partial restraints." *Akzo Nobel Coatings, Inc. v. Color & Equip. LLC*, 451 F. App'x 823, 824 (11th Cir. 2011).  "Under Alabama law, a restraint is partial, and not total, if the restrained

party can engage 'as a practical matter, in a meaningful pursuit of one's calling, notwithstanding the terms of the agreement.'" *Id.* at 824–25 (quoting *Ex parte Howell Eng'g & Surveying, Inc.*, 981 So. 2d 413, 423 n.4 (Ala. 2006)). "If the restraint is merely partial, the restraint can be upheld if it is 'properly restricted as to territory, time and persons' and supported by sufficient consideration." *Id.* at 825 (quoting *Gafnea v. Pasquale Food Co.*, 454 So. 2d 1366, 1368 (Ala. 1984)).

Medline argues that the agreement's non-solicitation provision is an enforceable partial restraint on trade because it prohibits Stryker only from soliciting a specific group of customers for a limited period of time. Doc. 77 at 20. For support, Medline cites to *Hoppe v. Preferred Risk Mutual Insurance Company*, 470 So. 2d 1161, 1163 (Ala. 1985), which held that Alabama Code § 8-1-1 did not void a non-solicitation clause because a "prohibition against soliciting the plaintiff's customers whose identities became known to the defendant in confidence as a result of the parties' prior relationship is not the same as a prohibition against engaging in a lawful profession, trade, or business." But the Alabama Supreme Court has overruled *Hoppe*. In *Sevier Insurance Agency, Incorporated v. Willis Corroon Corporation*, 711 So. 2d 995, 998 (Ala. 1998), the court held that § 8-1-1 does apply to non-solicitation agreements and that these agreements will be enforceable only if

they fall within the exceptions of § 8-1-1(b).[3] *Id.*  Later, the Alabama Supreme Court

partially overruled *Sevier* in *Ex parte Howell*, 981 So. 2d at 422–23, a case that,

unlike this one, arose from an employee's challenge to a no-hire provision negotiated

by her current and prospective employers.  *Ex parte Howell* overruled *Sevier* only to

the extent it conflicted with the holding that "a partial restraint of trade is not void

under § 8-1-1 even when there is no corollary noncompetition agreement with an

employee." *Id.* at 423.  And it did so on the way to enforcing the no-hire provision

at issue because the employee retained "an opportunity for meaningful

employment." *Id.* at 423.

The upshot of *Sevier* and *Ex parte Howell* is that Medline has the burden to

show that the non-solicitation provision is a partial restraint on trade that does not

run afoul of § 8-1-1.  Medline acknowledges that other courts typically have found

restraints to be partial and reasonable under Alabama law when they are restricted

as to "territory, time and persons."[4] Doc. 77 at 21–22 (quoting *Gafnea*, 454 So. 2d

---

[3] In *Hoppe*, 470 So. 2d at 1163 (citing § 8-1-1), the Alabama Supreme Court summarized the three exceptions carved out in § 8-1-1(b):

> First, the seller of a business may agree not to carry on a business similar to that of the purchaser of the good will of the business.  Second, one who "is employed as an agent, servant or employee may agree with his employer to refrain from carrying on or engaging in a similar business and from soliciting old customers of such an employer within a specified county, city or part thereof so long as the . . . employer carries on a like business therein."  Third, as a part of the dissolution of a non-professional partnership, partners can agree not to compete.

[4] *See, e.g., Akzo*, 451 F. App'x at 825 (enforcing non-solicitation provision that applied only to 20 counties in Alabama and five counties in Georgia); *Regions Bank v. Wells Faro Clearing Servs., LLC*, 2021 WL 720415, at *2–3 (M.D. Fla. Jan. 12, 2021) (referencing the court's prior finding that the provision was restricted as to territory, time, and persons).

at 1368).  Here, the agreement's non-solicitation provision is restricted as to time (covering "a period of 18 months after the termination . . . of this Agreement") and persons (restricting solicitation of "any customers that MEDLINE refers . . . to HYGIA"). Doc. 71-5 at 6.  But the agreement makes no reference to geography.  The question, then, is whether the non-solicitation provision's omission of any geographic limitation renders the agreement so broad as to prevent Stryker from "engag[ing] as a practical matter, in a meaningful pursuit of" its business. *Akzo*, 451 F. App'x at 824 (citation omitted).

To cover for this deficiency, Medline argues that Alabama courts have recognized restraints as partial and reasonable even when the terms of the relevant agreement omit an explicit geographical limitation so long as the agreement applies to a "specific group of identifiable customers." Doc. 77 at 22.  For example, in *Digitel Corp. v. DeltaCom, Inc.*, 953 F. Supp. 1486, 1496 (M.D. Ala. 1996), the non-solicitation provision was not limited as to geography on its terms. *Id.*  Nevertheless, the court found that

> the territory is inherently limited by its restriction of solicitation of former and prospective Digitel customers with whom [the defendants] had contact.  Such a group, by necessity, would only include customers and prospective customers in Alabama and portions of Georgia and Florida.  This tri-state area is a reasonably limited geographic scope.

*Id.*  The same cannot be said in the instant case, since Medline has not offered any evidence that its customers are similarly confined within a specific part of the

country.   And for good reason.   As Stryker argues, "the Agreement (at least as

Medline is trying to enforce it) would prohibit Stryker from selling *any* products to

over 800 customers across the nation, including some of the largest hospital groups

in the country." Doc. 80 at 9; *see* Doc. 77-24 (listing 863 customers).  Therefore, on

the record before the court the only reasonable inference is that the non-solicitation

clause operates with a nationwide scope.

Aside from *Digitel*, a handful of courts have found restraints on trade to be

partial even when the terms of the relevant agreement were not geographically

restricted. *See, e.g., Baird v. Tech Providers, Inc.*, 2017 WL 1057637, at *3–4 (N.D.

Ala. Mar. 21, 2017) (finding a restraint to be partial because it was limited to 12

months and prohibited the plaintiff only from working at one company); *Ex parte

Howell*, 981 So. 2d at 423 (holding that a no-hire provision was a partial restraint

because it applied only to one company).  In the most persuasive of these decisions

from Medline's standpoint, *Famex, Incorporated v. Century Insurance Services*, 425

So. 2d 1053, 1055 (Ala. 1982), the Alabama Supreme Court found a non-solicitation

agreement to be a partial restraint where it prohibited the solicitation of any of the

plaintiff's customers and lasted for only three years.  The court recognized its "well-

established" rule that restraints are partial "when properly restricted as to territory,

time and persons," *id.* at 1054–55 (quoting *Hibbett Sporting Goods, Inc. v.

Biernbaum*, 391 So. 2d 1027, 1029 (Ala. 1980)), but offered little explanation as to

why the non-solicitation agreement was "reasonable and sufficiently limited" when it had no geographical limitation. *Id.* at 1055.  Based on the court's research, the only cases to have relied on *Famex* either have been overruled or relied on other discrete components of *Famex*'s holding. *See Hoppe*, 470 So. 2d at 1164, *overruled by Sevier Ins. Agency*, 711 So. 2d at 998; *Digitel Corp.*, 953 F. Supp. at 1496–97 (relying on *Famex*'s support for a three-year restriction to uphold a two-year restriction); *Hughes Assocs., Inc. v. Printed Circuit Corp.*, 631 F. Supp. 851, 853 (N.D. Ala. 1986) (relying on *Famex* to conclude that a restraint can still be partial even if applied to an independent contractor).  And in any case, *Ex parte Howell*, 981 So. 2d at 422–23, is the Alabama Supreme Court's most recent systematic review of the caselaw interpreting Alabama Code § 8-1-1, and it merely reaffirmed that the pre-2016 statute did not prohibit partial restraints on trade.[5]

From these decisions, the court can distill a few core principles.  First, Alabama Code § 8-1-1 does not prohibit partial restraints on trade.  Second, Alabama law does not mandate that every partial restraint on trade must include an explicit geographical restriction.  Third, however, agreements without explicit geographical

---

[5] Medline also relies on *Corson v. Universal Door Systems, Inc.*, 596 So. 2d 565, 568 (Ala. 1991), but this decision is easily distinguishable.  In *Corson*, *id.*, the court held that a non-solicitation provision limited to eight states was reasonable and enforceable because the party seeking to enforce the provision had customers in only five of the states and the customer list was "relatively small."  By contrast, the Private Label Reprocessing Agreement's non-solicitation provision has no geographical limitation (*see* Doc. 71-5 at 6), and Medline's customer list includes over 800 customers across the country. *See* Docs. 77-24 & 80 at 9.

11

restrictions qualify as partial restraints only when they are carefully circumscribed to permit the contracting parties to continue meaningful business operations. *See Digitel Corp.*, 953 F. Supp. at 1496; *Baird*, 2017 WL 1057637, at *3–4; *Ex parte Howell*, 981 So. 2d at 423.  Because *Famex*, 425 So. 2d at 1055, glossed over the import of a geographical limitation, this court relies on the great weight of Alabama Supreme Court decisions consistently affirming the necessity for an explicit or implicit geographical limitation.  Medline has provided no evidence that the Private Label Reprocessing Agreement's non-solicitation provision is geographically limited in any way.  In fact, the evidence shows that the agreement prohibits Stryker from soliciting over 800 customers, including some of the largest health care organizations across the country.  There is no evidence before the court that Stryker or Hygia could continue their business operations in any substantial way during the life of the agreement if they were prohibited from contacting these customers.  On this record, Medline has not carried its burden of showing that the agreement is enforceable.  Accordingly, the court must find that the agreement's non-solicitation provision is a restraint on trade voided by the pre-2016 version of Alabama Code § 8-1-1.  Because Medline's claims depend upon the enforceability of the non-solicitation provision, summary judgment is due to be granted in Stryker's favor on all claims.

## IV.  CONCLUSION

For these reasons, Stryker's Motion for Summary Judgment (Doc. 70) is due to be granted, and all claims asserted by Medline are due to be dismissed with prejudice.

A final judgment will be entered separately.

DONE and ORDERED on May 25, 2021.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE